UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREAT AMERICAN INSURANCE
COMPANY,

                              Plaintiff,

                v.

HOULIHAN LAWRENCE, INC.,

                              Defendant.

No. 19-CV-1055 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Elana T. Henderson, Esq.
Geoffrey W. Heineman, Esq.
John J. Iacobucci, Jr., Esq.
Eric C. Weissman, Esq.
Ropers, Majeski, Kohn & Bentley
New York, NY
*Counsel for Plaintiff*

Robert J. Boller, Esq.
Charles P. Edwards, Esq.
Barnes & Thornburg LLP
New York, NY and Indianapolis, IN
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Plaintiff and Counter-Defendant Great American Insurance Company ("Plaintiff") brings

this Action for a declaratory judgment against Defendant and Counter-Claimant Houlihan

Lawrence, Inc. ("Defendant"), seeking a declaration that Plaintiff has no obligation to defend or

indemnify Defendant in connection with an underlying civil action against Defendant in state

court.  (*See generally* Compl. (Dkt. No. 1).)  Defendant brings a counterclaim against Plaintiff

for breach of contract, also seeking a declaratory judgment that Plaintiff has a duty to defend

Defendant, that a ruling on Plaintiff's duty to indemnify Defendant is premature, and that

Defendant is entitled to be represented by independent counsel of its choosing.  (*See generally*

Answer and Counterclaim ("Def.'s Answer") (Dkt. No. 13).)

Before the Court are the Parties' cross-motions for judgment on the pleadings, pursuant

to Federal Rule of Civil Procedure 12(c) ("Plaintiff's Motion" and "Defendant's Motion," or,

collectively, the "Motions").  (*See* Pl.'s Not. of Mot. ("Pl.'s Mot.") (Dkt. No. 27); Def.'s Not. of

Mot. ("Def.'s Mot.") (Dkt. No. 28).)  For the following reasons, Plaintiff's Motion is denied, and

Defendant's Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint, Defendant's Answer and

Counterclaim ("Defendant's Answer"), Plaintiff's Answer, the Policy (as defined herein),

exhibits to submissions relied on by or incorporated by reference into the pleadings, and the

publicly available documents docketed in the Underlying Action (as defined herein).  These

sources are properly considered on a Rule 12(c) motion.  *See 120 Greenwich Dev. Assocs.,*

*L.L.C. v. Admiral Indem. Co.*, No. 08-CV-6491, 2013 WL 12331487, at *1 n.1, *4 (S.D.N.Y.

Sept. 25, 2013) (explaining that on a Rule 12(c) motion, a court may consider the pleadings,

exhibits to the pleadings, statements or documents incorporated by reference in the pleadings,

any matter of which the court may take judicial notice, and documents that are "integral" to the

complaint) (collecting cases).

#### 1.  The Policy

Plaintiff issued a Real Estate Professional Liability Insurance Policy (the "Policy") to

Defendant for a policy period from July 26, 2016 to July 26, 2017.  (Compl. ¶ 18; *id.* Ex. B

("Policy"); Def.'s Answer ¶ 18.) The Policy had a limit of liability of $5 million per "Claim," which the Policy defined as "a written demand for money or services received by an Insured," or "a civil proceeding in a court of law . . . against an Insured . . . arising out of an act or omission in the performance of Real Estate Professional Services." (Compl. ¶¶ 19, 22; Policy 1; Def.'s Answer ¶¶ 19, 22.)[1] The $5 million limit of liability was "subject to a $50,000 per Claim retention." (Compl. ¶ 19; Def.'s Answer ¶ 19.) Effective January 9, 2017, Defendant cancelled the Policy and purchased an "Extended Reporting Period" from January 9, 2017 to January 9, 2020. (Compl. ¶ 20; Def.'s Answer ¶ 20.) The Extended Reporting Period allows Defendant to report Claims to Plaintiff that are made against Defendant through January 9, 2020 despite the cancellation of the Policy, so long as the Claims are made "by reason of an act or omission, which was committed prior to the end of the Policy Period and on, or subsequent to, the Retroactive Date," and would otherwise have been covered by the Policy. (Compl. ¶ 22; Policy 2; Def.'s Answer ¶ 22.)

As relevant to this Action, the Policy also provided:

The Company will pay on behalf of an Insured all sums in excess of the deductible that the Insured becomes legally obligated to pay as Damages and Claim Expenses as a result of a Claim first made against the Insured during the Policy Period or any applicable Extended Reporting Period by reason of an act or omission . . . in the performance of Real Estate Professional Services by the Insured . . . . The Company has the right and duty to defend any claim against an Insured even if any of the allegations of the Claim are groundless, false[,] or fraudulent. Defense counsel may be designated by the Company or, at the Company's option, by the Insured with the Company's written consent and subject to the Company's guidelines.

---

[1] Under the Policy, the "Insured" referred to Defendant. (Compl. ¶ 22; Policy 3; Def.'s Answer ¶ 22.) The Policy defined "Real Estate Professional Services" as "services performed for others in an Insured's capacity as[, inter alia,] a[] real estate agent or broker." (Compl. ¶ 22; Policy 4–5; Def.'s Answer ¶ 22.)

(Compl. ¶ 21; Policy 1; Def.'s Answer ¶ 21.)[2]  Also as relevant here, the Policy defined Damages as:

> [A]ny monetary judgment or award which an Insured is legally obligated to pay. Damages also means a monetary settlement to which the Company agrees on an Insured's behalf; provided, however, damages do not include . . . the return, restitution, reduction, compromise, or refund of fees, commissions, expenses or costs for Real Estate Professional Services performed or to be performed by an Insured and injuries that are a consequence of any fees, commissions, expenses[,] or costs charged by an Insured; . . . fines, penalties, forfeitures[,] or sanctions; . . . the multiplied portion of any multiplied awards; . . . the cost of compliance with any order for, grant of, or agreement to provide non-monetary relief, including services or injunctive relief; . . . punitive or exemplary amounts; . . . any amounts uninsurable as a matter of law or public policy.

(Compl. ¶ 22; Policy 2; Def.'s Answer ¶ 22.)  Section III of the Policy specifically provided that the Policy did "not apply to any Claim . . . based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal[,] or malicious act or omission by an Insured," ("Exclusion A"), and also did not apply to "any Claim . . . based on or arising out of . . . any disputes involving an Insured's fees, commissions[,] or charges . . . [or] the gaining of any personal profit or advantage to which an Insured is not legally entitled," ("Exclusion E").  (Compl. ¶ 23; Policy 5; Def.'s Answer ¶ 23.)

---

[2] As defined by the Policy, Plaintiff is the "Company."  (Compl. ¶ 22; Policy 2; Def.'s Answer ¶ 22.)  The Policy defined "Claim Expenses" as

> fees and costs charged by attorneys designated by the Company or designated by an Insured with the Company's prior written consent; . . . all other reasonable and necessary fees, costs[,] and expenses resulting from the investigation, adjustment, negotiation, arbitration, mediation, defense[,] or appeal of a Claim, if incurred by the Company or by an Insured with the Company's prior written consent[,] and . . . premiums on appeal bonds, attachment bonds or similar bonds; provided, however, the Company is not obligated to apply for or furnish any such bond.  Claim Expenses do not include fees, costs[,] or expenses of employees or officers of the Company, or salaries, loss of earnings[,] or other remuneration by or to an Insured.

(Compl. ¶ 22; Policy 2; Def.'s Answer ¶ 22.)

### 2. The Underlying Action

In July 2018, Pamela Goldstein, Ellyn Berk, Tony Berk, and Paul Benjamin (the "State Plaintiffs") filed a class action complaint against Defendant in the Supreme Court of the State of New York, Westchester County entitled *Goldstein, et al. v. Houlihan Lawrence, Inc.*, Index No. 6076/2018 (the "Underlying Action"). (Compl. ¶¶ 1, 9; Def.'s Answer ¶ 9.) State Plaintiffs seek to certify a class of consumers in Westchester, Putnam, and Dutchess Counties that includes "[a]ll buyers and sellers of residential real estate in Westchester, Putnam, and Dutchess counties from January 1, 2011 to the present wherein [Defendant] represented both the buyer and seller in the same transaction." (Compl. ¶ 16; Def.'s Answer ¶ 16.)

On October 1, 2018, State Plaintiffs filed a first amended complaint ("State FAC"), which was the operative complaint at the time Plaintiff filed its Complaint. (Compl. ¶ 10; *id.* Ex. A ("State FAC") (Dkt. No. 1-1); Def.'s Answer ¶ 10.) State Plaintiffs asserted claims for breach of fiduciary duty, unjust enrichment, and violations of New York Real Property Law § 443 and New York General Business Law ("GBL") § 349. (State FAC ¶¶ 334–56.) On April 8, 2018, the Supreme Court of the State of New York, County of Westchester, dismissed State Plaintiffs' unjust enrichment claim, as well as their claim under New York Real Property Law § 443 (the "State Opinion"). (Decl. of Philip M. Halpern Esq. ("Halpern Decl.") Ex. 4 ("State Op."), at 19 (Dkt. Nos. 28-1, 28-6).)[3] With respect to the unjust enrichment claim, the court found that the

---

[3] The Court may take judicial notice of the State Opinion. *See Johnson v. Pugh*, No. 11-CV-385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) ("A court may take judicial notice of matters of public record, including pleadings, testimony, and decisions in prior state court adjudications, on a motion pursuant to Rule 12(b)(6)." (citing *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000))). The Court may do so "to determine what statements [the documents] contain[,] not for the truth of the matters asserted," *Piazza v. Fla. Union Free Sch. Dist.*, 777 F. Supp. 2d 669, 678 (S.D.N.Y. 2011) (some alterations and all quotation marks omitted) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)), and "may refuse to accept as

allegations were "devoid of any assertions that [State Plaintiffs] contractually agreed to pay a commission," and the court "infer[red] that if the buyer did not pay the commission, . . . it is the sellers who paid the commission." (*Id.* at 17–18.) The court also dismissed State Plaintiffs' claim under New York Real Property Law § 443, finding that the statute does not provide for a private right of action. (*Id.* at 10–12.)

On May 14, 2019, State Plaintiffs filed a second amended complaint reasserting their claims for breach of fiduciary duty and violation of GBL § 349 ("State SAC"). (Decl. of Eric C. Weissman, Esq. ("Weissman Decl.") Ex. 1 ("State SAC") ¶¶ 334–56 (Dkt. Nos. 27-1–2).)[4, 5] State Plaintiffs alleged that Defendant engaged in a "scheme to lure thousands of homebuyers and sellers into dual[]agent transactions," and failed to properly disclose dual agency

---

true allegations in the [c]omplaint that are contradicted by th[e] record," *id.* (quotation marks omitted) (quoting *Bohmer v. New York*, 684 F. Supp. 2d 357, 360 (S.D.N.Y. 2010)).

[4] The State SAC was filed after Plaintiff filed its Complaint, and thus was not attached to the Complaint. However, Plaintiff submitted the State SAC as an exhibit to its Motion, and the Court may take judicial notice of this document. *See Rothman*, 220 F.3d at 92 (taking judicial notice of another complaint filed in state court "as a public record" (citation omitted)). Both Parties agree that little was changed in the State SAC, except for "a paragraph alleging that [two State] [P]laintiffs . . . are the lawful administrators of [an] estate." (Pl.'s Mem. 2 n.1; Def's Opp'n 6 n.6.) The State SAC is the operative complaint referenced in Plaintiff's Motion, while the State FAC is the complaint referenced by Defendant. As both Parties agree that little was changed between these two versions, the Court will refer to the State SAC herein.

State Plaintiffs have also since filed a Third Amended Complaint ("State TAC"). (Decl. of Philip M. Halpern, Esq. in Opp'n to Pl.'s Mot. ("Halpern Opp'n Decl.") Ex. 1 ("State TAC") (Dkt. Nos. 30, 30-1).) The Court notes throughout where the State SAC and State TAC substantively diverge.

[5] Although State Plaintiffs' claims of unjust enrichment and violation of New York Real Property Law § 443 were dismissed in the State Opinion, State Plaintiffs continued to include these claims in the State SAC, noting that the State Court granted Defendant's motion to dismiss on these claims. (*See* State SAC ¶¶ 342–48, 354–57.) Given that these claims were dismissed by the state courts, the Court does not consider them in detail here.

arrangements in contravention of New York law.  (*Id.* ¶ 5.)[6]  State Plaintiffs allege that

Defendant "induce[d] its . . . agents" to engage in the "scheme" by paying kickbacks, or extra

commission, to agents who received two commissions from dual agent transactions and

"conceal[ed this practice] . . . from consumers."  (*Id.* ¶¶ 6, 75, 82.)[7]  In the State SAC, State

Plaintiffs enumerate a number of "deceptive and unfair business practices," including, inter alia,

"[d]uping consumers into signing [f]orms that subject them to dual agency by default[,] . . .

[s]ystematically avoiding reference to the risks of dual agency[,] . . . [u]sing misleading and

uninformative listing agreements[,] . . . [f]ailing to notify clients when dual[]agent situations

arise[,]. . . [f]ail[ing] to disclose to buyer clients the full compensation it will receive for a

dual[]agent deal[,] . . . [and] [t]raining agents to rely on a broken system of misinformation and

phony advance consent."  (*Id.* ¶ 11.)[8]  State Plaintiffs allege that even when Defendant and its

agents did disclose dual agency arrangements, the disclosures and explanations were misleading

and insufficiently explained, as part of "a set of company-wide policies and practices that

*prevent*[ed] [Defendant's] clients from understanding the downsides, risks, and options of dual

agency."  (*See, e.g.*, *id.* ¶¶ 145, 152–53, 169, 179, 189, 193–94, 196, 198, 203–04 (emphasis in

---

[6] According to State Plaintiffs, dual agency arrangements arise "whenever a single brokerage firm represents both the seller and the buyer, even if two different salespeople within that one firm [] separately represent[] the seller and buyer."  (State SAC ¶ 42.)

[7] The State TAC no longer uses the term "kickback scheme" throughout, stating in only one paragraph that Defendant was "under a continuous duty to inform [State] Plaintiffs . . . of its in-house bonus kickback scheme."  (State TAC ¶ 89.)  However, the State TAC continues to assert that Defendant "knowingly and fraudulently concealed the true character of its agency relationship . . . and concealed its scheme to evade its fiduciary duties and flout its disclosure and informed-consent obligations."  (*Id.* ¶ 91.)

[8] State Plaintiffs no longer specifically aver that Defendant "[d]up[ed] consumers into signing forms."  (State SAC ¶ 11; *see generally* State TAC.)

7

original.).)[9]  According to State Plaintiffs, Defendant has "reaped huge profits using these and other tricks to lure [clients] into dual-agent transactions[,] pocketing hundreds of millions of dollars in unearned sales commissions," (*id.* ¶ 12), and its "disregard for fiduciary duties can only have been intentional," (*id.* ¶ 233).[10]  In the State SAC, State Plaintiffs cite a number of common questions of law and fact, including:

> [w]hether [Defendant] breached its fiduciary and statutory duties by failing to provide [State] Plaintiffs . . . with [s]tatutory [d]isclosure [f]orms[,] . . . [w]hether [Defendant] failed to obtain valid advance informed consent from [State] Plaintiffs[,] . . . [w]hether [Defendant] breached its fiduciary and statutory duties by failing to provide adequate disclosure of the risks . . . of dual agency . . . [,] [and] [w]hether [Defendant] has implemented policies and procedures to, among other things[,] . . . [m]ake misleading and insufficient disclosures in its listing agreements.

(*Id.* ¶ 333.)  With respect to the claims for breach of fiduciary duty and violation of GBL § 349, State Plaintiffs allege that Defendant "fail[ed] to disclose all material information necessary for the [c]lass members to decide whether or not to consent to dual agency," "act[ed] as a dual agent without obtaining the informed written consent of both parties to the transaction," "financially incentiviz[ed] agents to steer buyers and sellers into dual-agent transactions," and "intentionally misled [c]lass members and concealed and suppressed material facts concerning dual agency . . . [which] defrauded [State] Plaintiffs."  (*Id.* ¶¶ 337–40, 351.)  Under both remaining causes of action, State Plaintiffs assert that Defendant "forfeited its right to a commission . . . and is subject to punitive damages," (*id.* ¶ 341), and "damages as mandated under [§] 349," (*id.* ¶ 353). State Plaintiffs also seek injunctive relief, "a declaration that [Defendant's] conduct breached its

---

[9] While this specific sentence does not appear in the State TAC, State Plaintiffs still allege that Defendant "has promoted undisclosed, non-consensual dual agency through firm-wide policies and practices."  (State TAC ¶ 31.)

[10] These statements do not appear in the State TAC.

fiduciary duties to [State] Plaintiffs and the other [c]lass members," repayment of sales commissions collected as a result of "undisclosed, non-consensual" dual agency arrangements, attorneys' fees and costs, pre-judgment and post-judgment interest, and "[a]n award of such other relief as may be appropriate under the circumstances."  (*Id.* ¶ 358.)

### 3.  Communications Between the Parties

On July 27, 2018, counsel for Defendant informed Plaintiff that it had been retained to represent Defendant in the Underlying Action.  (Compl. ¶ 24; *id.* Ex. C ("July 27, 2018 Letter"), at 1 (Dkt. No. 1-3); Def.'s Answer ¶ 24.)  Prior to sending this letter, Defendant had not requested consent from Plaintiff to retain an attorney to represent Defendant in the Underlying Action.  (Compl. ¶ 25; Def.'s Answer ¶ 25.)  On July 31, 2018, Plaintiff sent Defendant its first "Reservation of Rights Letter," in which it noted "the potential applicability of various terms, conditions[,] and provisions of the Policy including, but not limited to, Exclusion[s] A [and E], and reserved all rights with respect thereto."  (Compl. ¶ 26; *id.* Ex. D ("July 31, 2018 Letter"), at 2–4 (Dkt. No. 1-4); Def.'s Answer ¶ 26.)  Plaintiff's letter also set forth the definition of Damages under the Policy and stated, "[p]lease understand that we are not denying coverage for this matter, merely we seek to advise you and clarify that certain aspects of the allegations made by the [State] Plaintiff[s] [are] not covered by the Policy."  (July 31, 2018 Letter 3–4.)

On December 5, 2018, Plaintiff supplemented its first letter after further investigating the Underlying Action.  (Compl. ¶ 27; *id.* Ex. E ("Dec. 5, 2018 Letter") (Dkt. No. 1-5); Def.'s Answer ¶ 27.)  Plaintiff wrote that although it "appear[ed] that coverage under the Policy may be available[,] [a]dditional policy provisions . . . may ultimately serve to limit or preclude coverage."  (Dec. 5, 2018 Letter 10.)  Plaintiff reserved its rights "with respect to the defense counsel for and claims expenses incurred by [Defendant]," and noted that because State Plaintiffs

seek "the forfeiture of commissions[,] . . . [Plaintiff] reserve[d] all of its rights as to whether the monies sought in the [l]awsuit are excluded from the definition of [d]amages." (*Id.* at 10–11.) Plaintiff also specifically noted that Exclusions A and E "may be applicable," and reserved its rights with respect to these Exclusions. (*Id.* at 11.)

On February 4, 2019, Plaintiff sent a third letter to Defendant, stating that Plaintiff had "determined that no coverage obligations exist[ed] under the Policy" with respect to the Underlying Action, "as a result of the application of" Exclusions A and E, and that Plaintiff would seek a judicial determination of "the [P]arties' rights with respect to the [l]awsuit and the Policy." (Compl. ¶ 28; *id.* Ex. F ("Feb. 4, 2019 Letter"), at 8 (Dkt. No. 1-6); Def.'s Answer ¶ 28.) Plaintiff further informed Defendant that the damages sought by State Plaintiffs were not damages as defined under the Policy. (Feb. 4, 2019 Letter 9.) Plaintiff wrote that it had not "consented to or approved the retention of either firm" retained by Defendant and that it "decided to exercise its rights under the Policy and assume control of the defense of the [l]awsuit," appointing a different firm to represent Defendant going forward. (*Id.*) Lastly, Plaintiff noted that Defendant had not requested Plaintiff's permission before incurring certain fees, costs, and expenses related to the lawsuit, and, thus, those expenses would not be reimbursed as Claim Expenses under the Policy. (*Id.*) Pending a judicial determination, Plaintiff stated that it would "assume the defense of the [l]awsuit on behalf of . . . [Defendant]." (*Id.* at 10.) According to Plaintiff, it is currently providing a defense to Defendant in the Underlying Action, which Defendant disputes. (Compl. ¶ 33; Def.'s Answer ¶ 33.)

B.  Procedural Background

Plaintiff filed its Complaint on February 4, 2019. (Dkt. No. 1.) After receiving an extension from the Court, (Dkt. No. 11), Defendant filed its Answer and Counterclaim on March

4, 2019, (Dkt. No. 13). Plaintiff filed its Answer to Defendant's Counterclaim on March 25, 2019. (Dkt. No. 19.) On June 7, 2019, with leave of the Court, Plaintiff and Defendant filed the instant Motions. (Pl.'s Mot.; Pl.'s Mem. of Law in Supp. of Mot. for J. on the Pleadings ("Pl.'s Mem.") (Dkt. No. 27-3); Weissman Decl.; Def.'s Mot.; Def.'s Mem. of Law in Supp. of Mot. for J. on the Pleadings ("Def.'s Mem.") (Dkt. No. 28-7); Halpern Decl.) Plaintiff and Defendant filed Responses to the Motions on June 28, 2019. (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. ("Pl.'s Opp'n") (Dkt. No. 29); Halpern Opp'n Decl.; Def.'s Mem. of Law in Opp'n to Pl.'s Mot. ("Def.'s Opp'n") (Dkt. No. 31).) As directed by the Court, the Parties did not file reply papers. (Dkt. No. 26.)

## II. Discussion

### A. Standard of Review

Both Parties move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). To prevail on such a motion, a party must establish that no material facts are in dispute and that judgment must be granted as a matter of law. *See Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988); *Nieves v. Comm'r of Soc. Sec.*, No. 17-CV-6844, 2019 WL 5722272, at *10 (S.D.N.Y. Aug. 9, 2019). "In deciding a Rule 12(c) motion, [the Court] employ[s] the same standard applicable to dismissals pursuant to Rule 12(b)(6)." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) (citation, alterations, and quotation marks omitted).

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, in adjudicating a Rule 12(c) motion, a court may consider the

pleadings, their exhibits, statements or documents incorporated by reference in the pleadings, "any matter of which [the court] can take judicial notice," and documents "integral" to the complaint. *120 Greenwich*, 2013 WL 12331487, at *4 (alterations and quotation marks omitted) (collecting cases).

B.  Analysis

Plaintiff argues that under Exclusions A and E, it has no duty to defend or indemnify Defendant in the Underlying Action.  (Pl.'s Mem. 1–2, 15–20.)  Defendant argues that Plaintiff has such a duty, that a decision on Plaintiff's duty to indemnify would be premature, and that Defendant is entitled to be represented by independent counsel of its choosing, for which Plaintiff must pay reasonable claim expenses without any right to recoup such expenses.  (Def.'s Mem. 1, 23.)  The Parties do not dispute that the Underlying Action constitutes a "Claim" under the Policy.  (Pl.'s Mem. 15 n.6; Def.'s Mem. 5–6.)

1.  Duty to Defend

"[U]nder New York law, 'the insurer's duty to furnish a defense is broader than its obligation to indemnify.'"  *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001) (quotation marks omitted) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272 (N.Y. 1984)); *see also Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82 (2d Cir. 2006) ("The 'exceedingly broad' contours of an insurer's duty to defend have been articulated clearly and repeatedly by the New York Court of Appeals." (citation omitted)); *Atl. Mut. Ins. Co. v. Terk Techs. Corp.*, 763 N.Y.S.2d 56, 61 (App. Div. 2003) ("The duty of an insurer to provide a defense for its insured is distinct from, and far broader than, its duty to indemnify." (citations omitted)).  If any allegations in the complaint "fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be," an insurer must

defend. *Seaboard*, 476 N.E.2d at 274 (citation omitted). The duty to defend "perdures until it is determined *with certainty* that the policy does not provide coverage." *Hugo Boss*, 252 F.3d at 620 (emphasis in original). "While the insurer's burden is a heavy one, the court should not impose a duty to defend on an insurer through a strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable." *Atl. Mut.*, 763 N.Y.S.2d at 62 (citation and quotation marks omitted). However, "a defense obligation may be avoided only where there is 'no possible factual or legal basis' on which an insurer's duty to indemnify under any provision of the policy could be held to attach." *Century 21*, 442 F.3d at 82–83 (quoting *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 477 N.E.2d 441, 444 (N.Y. 1985)); *see also Hotel Des Artistes v. Transam. Ins. Co.*, No. 93-CV-4563, 1994 WL 263429, at *3 (S.D.N.Y. June 13, 1994) ("An insurer seeking to avoid its duty to defend bears a heavy burden which, in practice, is rarely met." (citation omitted)).

Further, if an insurer asserts that coverage should be denied based on an exclusion clause, "the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage." *Atl. Mut.*, 763 N.Y.S.2d at 62 (citations omitted); *see also Hugo Boss*, 252 F.3d at 615 ("If the insurer is to be relieved of a duty to defend, it must demonstrate that the allegations of an underlying complaint place that pleading solely and entirely within the exclusions of the policy and that the allegations are subject to no other interpretation." (alteration and quotation marks omitted) (quoting *Hanover Ins. Co. v. Cowan*, 568 N.Y.S.2d 115, 116 (App. Div. 1991)). "[A]n insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Sea Ins. Co. v. Westchester Fire Ins. Co.*, 51 F.3d 22, 26 (2d Cir. 1995) (citation and quotation marks omitted); *see also CGS Indus., Inc. v.*

*Charter Oak Fire Ins. Co.*, 751 F. Supp. 2d 444, 450 (E.D.N.Y. 2010) ("[E]xclusions are subject to strict construction and must be read narrowly." (quotation marks omitted) (quoting *Auto Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152, 1156 (N.Y. 2006))), *aff'd*, 720 F.3d 71 (2d Cir. 2013).

"To determine if a defense obligation exists, courts compare the allegations of the complaint to the terms of the policy." *Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*, 812 F. Supp. 2d 527, 535 (S.D.N.Y. 2011) (quotation marks omitted) (quoting *A. Meyers & Sons Corp. v. Zurich Am. Ins. Grp.*, 545 N.E.2d 1206, 1208 (N.Y. 1989)), *aff'd*, 559 F. App'x 15 (2d Cir. 2014); *see also Accessories Biz, Inc. v. Linda & Jay Keane, Inc.*, 533 F. Supp. 2d 381, 386 (S.D.N.Y. 2008) (same). "If the facts alleged raise a reasonable possibility that the insured may be held liable for some act or omission, then the insurer must defend." *A. Meyers*, 545 N.E.2d at 1208 (citation omitted); *see also Atl. Mut.*, 763 N.Y.S.2d at 61 ("An insurer's duty to defend is triggered whenever allegations set forth in a complaint state a cause of action that gives rise to a reasonable possibility of recovery under the policy." (citations omitted)). "Conversely, if the allegations interposed in the underlying complaint allow for no interpretation which brings them within the policy provisions, then no duty to defend exists." *Id.* at 61–62 (citations omitted). "The insurer's duty to defend the entire action is triggered even if only one claim is potentially covered by the insurance policy." *Mass. Bay Ins. Co. v. Penny Preville, Inc.*, No. 95-CV-4845, 1996 WL 389266, at *4 (S.D.N.Y. July 10, 1996) (citing *Seaboard*, 476 N.E.2d at 274); *see also GRE Ins. Grp. v. GMA Accessories, Inc.*, 691 N.Y.S.2d 244, 247 (Sup. Ct. 1988) ("[A]n insurer must defend against an entire action even if only one claim potentially falls within the indemnity coverage of the policy." (citation omitted)). However, allegations in the complaint are not necessarily the "*sole* criteria for measuring the scope of th[e] duty [to defend]." *Fitzpatrick v.*

*Am. Honda Motor Co., Inc.*, 575 N.E.2d 90, 92 (N.Y. 1991) (emphasis in original). In fact, "wooden application of the 'four corners of the complaint' rule would render the duty to defend narrower than the duty to indemnify." *Id.* Thus, "the insurer [is also required] to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage." *Id.* at 93 (citation and footnote omitted).

Here, the Court must determine whether State Plaintiffs' allegations against Defendant, "liberally construed," are "within the embrace of the [P]olicy." *Century 21*, 442 F.3d at 83 (quotation marks omitted) (citing *Colon v. Aetna Life & Cas. Ins. Co.*, 484 N.E.2d 1040, 1041 (N.Y. 1985)). "In interpreting the insurance policy, the ordinary rules of contractual interpretation apply." *Mass. Bay*, 1996 WL 389266, at *5. "If the language of the policy is clear on its face, that language governs, but any terms that are ambiguous must be construed in favor of the insured." *Id.* (citations, alteration, and quotation marks omitted). "If a relevant term is not defined in the policy, it is to be afforded its ordinary meaning, which may include its usage in federal law; [and, again,] any ambiguity must be resolved in favor of the insured." *CGS Indus.*, 751 F. Supp. 2d at 450 (citations omitted).

"[T]he question of whether an insurance policy is ambiguous is a matter of law to be determined by the court." *Hugo Boss*, 252 F.3d at 616–17 (alteration and quotation marks omitted) (quoting *Bd. of Managers of Yardarm Condo. II v. Fed. Ins. Co.*, 669 N.Y.S.2d 332, 333 (App. Div. 1998)). The Second Circuit has explained that "an ambiguous word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages[,] and terminology as generally understood in the particular trade or business[;] [c]onversely, . . . contract language is not ambiguous if it has a definite and precise

meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Id.* at 617 (citations, alterations, and quotation marks omitted).

### a. Application of Exclusion A

Under Exclusion A, the Policy "does not apply to any Claim . . . based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal[,] or malicious act or omission by an Insured." (Policy 5.) Plaintiff argues that this exclusion applies to the Underlying Action because State Plaintiffs "make it absolutely clear . . . that [Defendant's] fraudulent, deceptive, or wrongful conduct was intentional," and because State Plaintiffs raise intentionality "throughout the SAC, and [it is] specified in great detail." (Pl.'s Mem. 17.) Neither Party contends that Exclusion A is ambiguous.

Although much of the State SAC does allege that Defendant acted intentionally, it also "allege[s] wrongs of, at least arguably, an unintentional nature." *Hotel Des Artistes*, 1994 WL 263429, at *2. For example, while State Plaintiffs allege that Defendant breached its fiduciary duty and violated GBL § 349 by "intentionally misleading [c]lass members and concealing and suppressing material facts," (State SAC ¶ 351; *see also id.* ¶ 340), they also allege, inter alia, that Defendant "breached its fiduciary duties . . . by failing to disclose all material information necessary[,] . . . [and] by acting as a dual agent without obtaining the informed written consent of both parties to the transaction," (*id.* ¶¶ 338–39), and make similar allegations with respect to the alleged violation of GBL § 349, (*id.* ¶ 351). While neither of these allegations explicitly mentions negligence, when liberally construed, either could support such a finding, thus suggesting a reasonable possibility of coverage under the Policy. *See Dollar Phone Corp. v. St. Paul Fire and Marine Ins. Co.*, No. 09-CV-1640, 2012 WL 1077448, at *13–14 (E.D.N.Y. Mar.

9, 2012) (finding that although the majority of a complaint alleged intentional conduct and did not specifically refer to any conduct as "negligent," the plaintiff could have recovered without proof of intentional conduct because not all allegations in the complaint specified the defendant's state of mind), *adopted by* 2012 WL 1078994 (E.D.N.Y. Mar. 30, 2012), *aff'd*, 514 F. App'x 21 (2d Cir. 2013). Indeed, many of the "common questions of law and fact" enumerated by State Plaintiffs also do not specifically allege intentional conduct, and the two claims dismissed in the State Opinion did not refer to intentional conduct at all. (*See, e.g.*, State SAC ¶¶ 333, 342–48, 355–57.) Thus, even if State Plaintiffs are ultimately unable to prove that Defendant executed a scheme to intentionally mislead its clients, State Plaintiffs may still be able to establish negligence by demonstrating, for example, that Defendant negligently failed to disclose all material information and obtain informed written consent of both parties to a dual agency transaction. Thus, "there remains a reasonable possibility that [Defendant] will be found liable for conduct covered by the policy." *Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.*, 295 F. Supp. 2d 335, 341 (S.D.N.Y. 2003) (further stating that it was "not unreasonable" for the plaintiffs in the underlying action "to argue that [the defendant] acted intentionally and, in the alternative, negligently" (citation omitted)); *see also E. Ramapo Cent. Sch. Dist. v. N.Y. Schs. Ins. Reciprocal*, 54 N.Y.S.3d 413, 417 (App. Div. 2017) (affirming the trial court's finding of a duty to defend when "the cause of action alleging breach of fiduciary duty was premised on both intentional and negligent conduct").

Further supporting this conclusion, claims of breach of fiduciary duty and violation of GBL § 349 do not require intentionality, something which courts have routinely considered in assessing an insurer's duty to defend. *See, e.g.*, *Dollar Phone Corp.*, 2012 WL 1077448, at *13– 14 (finding that although the majority of a complaint alleged intentional conduct and did not

specifically refer to any conduct as "negligent," the plaintiff could have recovered without proof of intentional conduct because "several claims" were brought "under statutes that permit recovery even on the basis of negligent conduct"); *SAS Grp., Inc. v. Great Am. E&S Ins. Co.*, No. 08-CV-1020, 2010 WL 11590320, at *9 (S.D.N.Y. Nov. 9, 2010) (finding that a "knowing violation exclusion" did not apply because the plaintiffs could be found liable under GBL "without a showing of intentional or knowing conduct on their part" (citation omitted)); *Napoli*, 295 F. Supp. 2d at 340 ("A breach of fiduciary duty claim can be based on negligence . . . ." (citation omitted));[11] *Hotel Des Artistes*, 1994 WL 263429, at *2 ("The . . . complaint [in the underlying action], liberally construed, contains allegations that bespeak negligence. . . . Similarly, the breach of fiduciary duty claims . . . could have been established by proof of negligence." (footnote omitted)); *Cosser v. One Beacon Ins. Grp.*, 789 N.Y.S.2d 586, 587 (App. Div. 2005) ("[The] [p]laintiffs may be liable to [the insured] pursuant to . . . [GBL] in the underlying action without a showing of intentional or knowing conduct on their part." (alterations, citations, and quotation marks omitted)); *Sarin v. CNA Fin. Corp.*, 873 N.Y.S.2d 237 (Table) (Sup. Ct. 2008) (same); *cf. CGS Indus. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 83 (2d Cir. 2013) (considering both the allegations of willfulness in the underlying Lanham Act action and whether the Lanham Act claim required intent in deciding that because the claim did not require intent, a "knowing violation" policy exclusion did not apply); *Bridge Metal Indus.*,

---

[11] Plaintiff argues that *Napoli* is distinguishable because the court found that the plaintiffs "careful[ly] did not allege that the breach of fiduciary duty was intentional." (Pl.'s Opp'n 10–11.) *See Napoli*, 295 F. Supp. 2d at 340. However, although the court considered this fact in its analysis, it was not dispositive, as the court ultimately stated that under New York law, the "standard is whether there is *any possible* factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." *Id.* at 341 (emphasis added) (citation and quotation marks omitted) (quoting *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 690 N.E.2d 866, 868–69 (N.Y. 1997)).

812 F. Supp. 2d at 545 (finding, in the context of the Lanham Act, that "despite the allegations of intentional conduct by [the] [p]laintiffs, [the] complaints asserted covered causes of action for which [the] [p]laintiffs could have been found liable without any intentional conduct"); *Park Place Entm't Corp. v. Transcont'l Ins. Co.*, No. 01-CV-6546, 2003 WL 1913709, at *5 (S.D.N.Y. Apr. 18, 2003) (finding that, even without an affidavit that did not allege knowing conduct, "there could still be a duty to defend," because although "the plaintiffs in the underlying suits allege[d] intentional and/or knowing defamation in their complaints, . . . they need not prove intent or knowledge to prevail on a claim of defamation");[12] *Mass. Bay Ins. Co.*, 1996 WL 389266, at *10 (finding, in the context of copyright infringement, that a party "could have been found liable . . . without being found to have acted knowingly, willfully[,] and intentionally").

Given that neither a claim of breach of fiduciary duty nor a violation of GBL § 349 requires a finding that Defendant acted intentionally, and that "under New York law, allegations must be liberally construed in favor of coverage," *Quaco v. Liberty Ins. Underwriters Inc.*, No. 17-CV-7980, 2018 WL 4572249, at *5 (S.D.N.Y. Sept. 23, 2018) (citation and quotation marks omitted), it cannot be said that "there is no possible factual or legal basis on which [Plaintiff] may eventually be held obligated to indemnify [Defendant]," *East Ramapo*, 54 N.Y.S.3d at 418 (citations and quotation marks omitted). Were this Court to find otherwise, and "one or more [State] [P]laintiffs were to prevail in their . . . claims without proving knowledge, then this could

---

[12] Plaintiff argues that *Park Place Entertainment*, 2003 WL 1913709, is distinguishable because "the[] pleadings did not actually foreclose the possibility that the defamation was unintentional," whereas here, State Plaintiffs in the Underlying Action alleged that Defendant's "disregard for fiduciary duties can only have been intentional," (State SAC ¶ 233), and thus "must, and not merely may, prove intentionality in order to prevail," (Pl.'s Opp'n 11–12). Even if this allegation were dispositive, which it is not, as noted, State Plaintiffs have removed it from the State TAC, and the fiduciary duty and GBL § 349 claims do not require a showing of intentional conduct.

lead to . . . [an] unacceptable result . . . : that the duty to defend would be narrower than the duty to indemnify." *Park Place Entm't*, 2003 WL 1913709, at \*5 (quotation marks omitted) (quoting *Fitzpatrick*, 575 N.E.2d at 92).

Plaintiff argues that because the "gravamen" of the State SAC sounds in intentional conduct, Exclusion A must apply. (Pl.'s Opp'n 2, 9, 13.) As noted by other courts in this District, however, while it is true that the duty to defend "depends on the facts which are pleaded, not the conclusory assertions" listed in the State SAC, *Allstate Ins. Co. v. Mugavero*, 589 N.E.2d 365, 370 (N.Y. 1992) (citation omitted), there is also an obligation to interpret underlying claims liberally and exclusions narrowly, *see CGS Indus.*, 751 F. Supp. 2d at 450, 452 (construing the underlying complaint "liberally" and explaining that exclusions "must be read narrowly" (citation and quotation marks omitted)). Further, many of the cases cited by Plaintiff to support this proposition are distinguishable, as the plaintiffs in those underlying actions were required to prove intentional or fraudulent acts in order to bring the claims they asserted. For example, in *Tartaglia v. Home Ins. Co.*, 658 N.Y.S.2d 388 (App. Div. 1997), "the only theory of liability . . . *require[d]* proof of intentional wrongdoing," *id.* at 398 (emphasis added), and in *Davis v. Home Ins. Co.*, No. 95-CV-94, 1995 WL 380133 (S.D.N.Y. June 25, 1995), the charged acts "all require[d] the Government to prove an element of intent and deliberate wrongfulness," *id.* at \*2. *See also Lewis & Stanzione v. St. Paul Fire & Marine Ins. Co.*, No. 13-CV-863, 2015 WL 3795780, at \*3 (N.D.N.Y. June 17, 2015) (highlighting that the complaint "assert[ed] only a single claim of fraud against" the defendant (record citation omitted)); *Amguard Ins. Co. v. Country Plaza Assocs. Inc.*, No. 13-CV-5205, 2014 WL 3016544, at \*7 (E.D.N.Y. July 3, 2014) (explaining that the underlying causes of action required showings of intentional conduct, and that the prima facie tort claim required malice); *Chicago Ins. Co. v.*

*Borsody*, 165 F. Supp. 2d 592, 598 (S.D.N.Y. 2001) (noting that the defendant was charged under the Fraud Act, which requires knowing conduct); *Mugavero*, 589 N.E.2d at 370 (determining, in the context of sexual molestation claims, that the injuries were "intentionally caused").[13] Here, as the State SAC does not foreclose a finding of negligence, and neither of State Plaintiff's remaining claims requires intentional conduct, Exclusion A does not apply, and Plaintiff's duty to defend is triggered.

### b. Application of Exclusion E

Under Exclusion E, the Policy does not apply to "any Claim . . . based on or arising out of . . . any disputes involving an Insured's fees, commissions[,] or charges." (Policy 5.) Plaintiff argues that this exclusion applies because "the [State] [P]laintiffs . . . seek the return of commissions allegedly earned by [Defendant] due to the dual agency transactions," and, therefore, "the Claim . . . arises out [of] a dispute involving [Defendant's] commissions." (Pl.'s Mem. 19–20.)[14] Defendant argues that Exclusion E does not apply because "[t]he Underlying

---

[13] Plaintiff also argues that New York public policy bars an insured from seeking coverage when it engages in conduct with the intent to cause injury. However, "the New York Court of Appeals has made it clear that the public policy exception for intentionally harmful conduct is a narrow one, under which it must be established not only that the insured acted intentionally, but further, that it acted with the intent to harm or injure others." *Lawrence v. Cont'l Cas. Co., Inc.*, No. 12-CV-412, 2013 WL 4458755, at *6 n.12 (E.D.N.Y. Aug. 16, 2013) (quotation marks omitted) (quoting *J.P. Morgan Secs. Inc. v. Vigilant Ins. Co.*, 992 N.E.2d 1076, 1081 (N.Y. 2013)). Here, although State Plaintiffs allege that Defendant acted intentionally, this fact has not been established, nor has it been established that Defendant acted "with the intent to harm or injure others." *J.P. Morgan*, 992 N.E.2d at 1081 (citation omitted). Additionally, the case to which Plaintiff cites in support of its proposition involved an exclusion that was broader than the one at issue here. (Pl.'s Opp'n 6.) *See Silverman Neu, LLP v. Admiral Ins. Co.*, 933 F. Supp. 2d 463, 469 (E.D.N.Y. 2013) (noting that the policy at issue excluded "any liability based in whole *or in part* on any knowingly wrongful, dishonest, fraudulent, criminal[,] or malicious act" (emphasis added)).

[14] Plaintiff also cites a second portion of Exclusion E, which excludes coverage for all claims based on or arising out of "the gaining of any personal profit or advantage to which an Insured is not legally entitled." (Pl.'s Mem. 19.) However, Plaintiff does not elaborate on the application of this portion of the Exclusion E, and thus has not met its burden to "demonstrate

Action does not arise out of any dispute over [Defendant]'s commissions" and instead arises out of Defendant's "dual[]agency disclosures." (Def.'s Opp'n 15, 17.) As a back-up position, Defendant claims that Exclusion E is ambiguous, citing several cases where courts have found ambiguity in applying phrases using the terms "based on and arising out of." (*Id.* at 15–17.) Defendant does not, however, describe how Exclusion E is ambiguous and does not provide competing interpretations. (*See id.*)

Even if the Court were to determine that Exclusion E is unambiguous and relates to any dispute that involves commissions in any capacity, the Court would deem the Exclusion inapplicable to the Underlying Action. Under New York law, "[i]n the context of a policy exclusion, the phrase 'arising out of' is . . . interpreted broadly to mean 'originating from, incident to, or having connection with.'" *Scottsdale Indem. Co. v. Beckerman*, 992 N.Y.S.2d 117, 121 (App. Div. 2014) (quoting *Maroney v. New York Cent. Mut. Fire Ins. Co.*, 839 N.E.2d 886, 889 (N.Y. 2005)) (collecting cases). Thus, to successfully invoke Exclusion E, Plaintiff must demonstrate that the claims in the Underlying Action are based on or arising out of any dispute involving Defendant's "fees, commissions[,] or charges." (Policy 5.) "Under New York law, a court makes such a determination by examining whether the asserted claim could succeed but for the excluded conduct." *Beazley Ins. Co., Inc. v. ACE Am. Ins. Co.*, 880 F.3d 64, 71 (2d Cir. 2018) (citing *Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 668 N.E.2d 404 (N.Y. 1996)). The test provides, "if the plaintiff in an underlying action or proceeding alleges the existence of facts clearly falling within such an exclusion, and none of the causes of action that he or she asserts could exist but for the existence of the excluded activity or state of affairs, the

---

that the allegations of [the] underlying complaint place [it] solely and entirely within the exclusion[]." *Hugo Boss*, 252 F.3d at 615 (citation and quotation marks omitted).

insurer is under no obligation to defend the action." *Id.* (quoting *Scottsdale Indem. Co. v. Beckerman*, 992 N.Y.S.2d 117, 121 (App. Div. 2014)).

Based on this test, the Court cannot say that State Plaintiffs' causes of action would not exist but for a dispute involving Defendant's commissions; instead, State Plaintiffs' claims would not exist but for the alleged misrepresentations and omissions made by Defendant. For example, with respect to the allegation that Defendant acted in violation of GBL § 349, State Plaintiffs contend that Defendant "caused injury to [State] Plaintiffs and the other [c]lass members, *including* because [State] Plaintiffs and other [c]lass members paid commissions to [Defendant] to which the firm . . . was not entitled" when Defendant "fail[ed] to disclose all material information necessary . . . [,] act[ed] as dual agent without obtaining the informed written consent of both parties to the transaction . . . [,] and financially incentiviz[ed] agents to steer buyers and sellers into dual-agent transactions." (State SAC ¶¶ 337–39, 351–52.) Further, State Plaintiffs' GBL claim does not *require* that State Plaintiffs suffered economic damage, such as improperly charged commissions. *See McCrobie v. Palisades Acquisition XVI, LLC*, 359 F. Supp. 3d 239, 256 (W.D.N.Y. 2019) ("[GBL] § 349 does not require pecuniary harm or quantifiable economic loss to meet its actual-injury requirement and to recover the fifty-dollar statutory damage sum."). Thus, this cause of action could exist even without the allegation that State Plaintiffs paid improper commissions to Defendant. Therefore, the Court cannot find that all of the causes of action would not exist *but for* the existence of commission-related allegations. *See Mass. Bay Ins.*, 1996 WL 389266, at *4 ("The insurer's duty to defend the entire action is triggered even if only one claim is potentially covered by the insurance policy." (citing *Seaboard*, 476 N.E.2d at 274)).

Plaintiff further argues that it is clear from the State Complaint that State Plaintiffs are seeking only one category of damages—commissions—which is excluded from the definition of damages in the Policy. (Pl.'s Mem. 20; Pl.'s Opp'n 12–13; *see* Policy 2 ("Damages do not include . . . the return, restitution, reduction, compromise[,] or refund of . . . commissions . . . for Real Estate Professional Services performed or to be performed by an Insured and injuries that are a consequence of any . . . commissions charged by an [i]nsured.").) Plaintiff thus appears to argue that it is "relieved of the duty to defend," because there is "no possible factual or legal basis on which [Plaintiff] might eventually be obligated to indemnify its insured under any policy provision." *Atl. Mut. Ins.*, 763 N.Y.S.2d at 62 (citations and quotation marks omitted). Defendant avers that return of commissions is only one category of damages sought by State Plaintiffs, who also request "attorneys' fees and costs, as allowed by law," punitive damages, injunctive relief, and "other damages as may be appropriate," and, as a secondary argument, that the definition of "Damages" in the Policy is ambiguous. (*See* Def.'s Mem. 15–18; State SAC ¶ 358.)

Certain damages that may be sought by State Plaintiffs are not clearly barred by this provision; thus, the Court need not reach the question at this stage of whether the provision is ambiguous, because it cannot find that there is "no possible factual or legal basis on which [Plaintiff] might eventually be obligated to indemnify its insured under any policy provision," *Atl. Mut. Ins.*, 763 N.Y.S.2d at 62 (citations and quotation marks omitted). For example, State Plaintiffs seek attorneys' fees, and it is also conceivable that some or all of State Plaintiffs will be awarded statutory damages of $50 under GBL § 349, particularly if the finder of fact determines that State Plaintiffs did not pay commissions. *See Nwagboli v. Teamwork Transp. Corp.*, No. 08-CV-4562, 2009 WL 4797777, at *7 (S.D.N.Y. Dec. 7, 2009) ("Pursuant to GBL

§ 349, a prevailing plaintiff is entitled to his actual damages or fifty dollars, whichever is greater." (citation and quotation marks omitted)); *see also McCrobie*, 359 F. Supp. 3d at 256 ("[Section] 349 does not require pecuniary harm or quantifiable economic loss . . . to recover the fifty-dollar statutory damage sum . . . ."). The Policy defines damages as "any monetary judgment or award which an [i]nsured is legally obligated to pay." (Policy 2.) Thus, even if the Court were to find the definition of Damages to be ambiguous, it cannot determine that "each and every claim asserted against the insured" is "unambiguously excluded from coverage." *Napoli*, 295 F. Supp 2d at 341 (citation and quotation marks omitted).

Additionally, a factual dispute in the Underlying Action suggests that Plaintiff's Motion with respect to Exclusion E is premature, as the State Opinion implies that State Plaintiffs may not have paid commissions at all. (Def.'s Mem. 14; State Op. 17–19.) Plaintiff argues that the Court cannot consider this finding because the analysis of an exclusion's application must be limited to the four corners of the Complaint. (Pl.'s Opp'n 12–13.) Conversely, it is well established under New York law that "rather than mechanically applying only the 'four corners of the complaint' rule . . . , the sounder approach is to require the insurer to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage." *Fitzpatrick*, 571 N.Y.S.2d at 675 (citation and footnote omitted). Thus, the Court properly considers and takes judicial notice of the State Opinion "to determine what statements [the documents] contain[,] not for the truth of the matters asserted," *Piazza*, 777 F. Supp. 2d at 678 (first alteration in original) (one alteration and quotation marks omitted) (quoting *Kramer*, 937 F.2d at 774)), and "may refuse to accept as true allegations in the Complaint that are contradicted by th[e] record," *id.* (quotation marks omitted) (quoting *Bohmer*, 684 F. Supp. 2d at 360). The assertions in the State Opinion suggest that there is a dispute in the Underlying Action as to

whether State Plaintiffs paid commissions to Defendant.  (*See* State Order 17–18 ("As for the [State] [P]laintiffs . . . [D]efendant argues that they paid no commission, as it came from the sellers . . . .  [State] Plaintiffs respond by arguing that the sales price was designed to include the commission, so the [State] [P]laintiffs implicitly did bear th[e] expense.").)  Such a fact is highly relevant to the application of Exclusion E, which bars claims based on or arising out of disputes involving commissions.  Were the Court to apply Exclusion E at this stage, and the court in the Underlying Action were to ultimately find that no commissions were paid by State Plaintiffs, but that other damages were merited, this Court's finding would render the duty to defend narrower than the duty to indemnify which is an "unacceptable result."  *Park Place Entm't*, 2003 WL 1913709, at *5 (citation and quotation marks omitted).  Therefore, such a factual dispute renders a judgment on the pleadings for Plaintiff improper and gives rise to Plaintiff's duty to defend.  *See Hugo Boss*, 252 F.3d at 620 (noting that a factual uncertainty "can give rise to . . . a duty to defend," and that "the insurer cannot avoid its duty to defend" until such an uncertainty is "ultimately . . . resolved by courts or juries").

## 2.  Duty to Indemnify

"It is premature for the Court to determine whether or not [Plaintiff] has a duty to indemnify [Defendant] because the issue of indemnification necessarily depends on facts that will be decided in the underlying state action."  *Am. Auto. Ins. Co. v. Sec. Income Planners & Co.*, 847 F. Supp. 2d 454, 465 (E.D.N.Y. 2012); *see Westport Ins. Corp. v. Hamilton Wharton Grp., Inc.*, No. 10-CV-2188, 2011 WL 724737, at *4 (S.D.N.Y. Feb. 23, 2011) (explaining that an insurer's "duty to indemnify [an insured] necessarily depends on the resolution of one or more issues to be determined in the [s]tate [a]ctions and is, therefore, premature" (citation and quotation marks omitted)), *aff'd*, 483 F. App'x 599 (2d Cir. 2012); *Specialty Nat'l Ins. Co. v.*

*English Bros. Funeral Home*, 606 F. Supp. 2d 466, 472 (S.D.N.Y. 2009) ("An action to declare the insurer's duty to indemnify is premature and does not lie where the complaint in the underlying action alleges several grounds of liability, some of which invoke the coverage of the policy, and where the issues of indemnification and coverage hinge on facts which will necessarily be decided in that underlying action." (quoting *Hout v. Coffman*, 511 N.Y.S.2d 990 (App. Div. 1987))).

Because the Underlying Action remains pending, the Court denies as premature Plaintiff's Motion with respect to Plaintiff's duty to indemnify.

### 3. Entitlement to Independent Counsel

Defendant argues that it is entitled to independent counsel of its choosing because Plaintiff's reservation of right to deny coverage based on Exclusion A "is the classic conflict of interest that gives [Defendant] the right to choose its own independent counsel." (Def.'s Mem. 20 (citations omitted).) Plaintiff avers that no such conflict exists and, if it does, the rates charged by the independent counsel must be reasonable. (Pl.'s Opp'n 14–18.)

"An insurer's reservation of rights does not automatically entitle its insured to representation of its choice at the insurer's expense." *Exec. Risk Indem. Inc. v. Icon Title Agency, LLC*, 739 F. Supp. 2d 446, 450 (S.D.N.Y. 2010). Instead, under New York law,

> [the] insured's right to independent counsel is only triggered when the reservation of rights creates a potential conflict of interest for the counsel provided by the insurer, and in particular, where the defense attorney's duty to the insured would be to defeat liability on *any* ground but his duty to the insurer would be to defeat liability on *only those* grounds for which the insurer might be liable.

*Id.* (emphasis in original) (footnote omitted) (citing *Public Service Mut. Ins. Co. v. Goldfarb*, 425 N.E.2d 810 (N.Y. 1981)). "When such a conflict is apparent, the insured must be free to choose his own counsel whose reasonable fee is to be paid by the insurer." *Goldfarb*, 425 N.E.2d at 815

n.*.  Further, "where multiple claims present no conflict—for example, where the insurance contract provides liability coverage only for personal injuries and the claim against the insured seeks recovery for property damage as well as for personal injuries—no threat of divided loyalty is present and there is no need for the retention of separate counsel." *Id.*

Here, the remaining claims in the Underlying Action are those for breach of fiduciary duty and violation of GBL § 349.  As explained, both claims involve allegations that Defendant acted intentionally, but also may result in a finding that Defendant acted negligently.  Because the Policy excludes coverage for any claim based on or arising out of intentional acts by an insured, and the Underlying Action "may result in a finding that [Defendant] acted fraudulently, [Defendant] has alleged a potential conflict of interest sufficient to trigger a right to independent counsel." *Exec. Risk Indem.*, 739 F. Supp. 2d at 450 (footnote omitted); *see also 222 E. 57th St. Owners, Inc. v. Greater N.Y. Mut. Ins. Co.*, 589 N.Y.S.2d 481, 482 (App. Div. 1992) (finding that there was a "genuine conflict of interest between [the] defendant insurer and [the] plaintiff arising from [the defendant's] claim that [the] plaintiff's conduct, forming the basis of the other action, may have been intentional and . . . outside the scope of . . . the policy"); *Allstate Ins. Co. v. Long*, 446 N.Y.S.2d 742, 743 (App. Div. 1981) (finding a conflict when the complaint in the underlying action "embodie[d] claims sounding both in negligence and intentional tort" and under the policy, the carrier would be liable "only for the insured's negligence and thus would benefit from a finding of an intentional tort").  Thus, Defendant is entitled to independent counsel, with reasonable costs to be paid by Plaintiff.  *See Sea Tow Servs. Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 211 F. Supp. 3d 528, 548 (E.D.N.Y. 2016) ("The New York Court of Appeals has held that when a conflict of interest exists between the insurer and the insured, then

the obligation to defend includes an obligation to pay reasonable attorneys' fees for independent counsel for the insured." (citing *Goldfarb*, 425 N.E.2d at 815)).[15]

Although Defendant seeks a finding that Plaintiff may not recoup any Claim Expenses, Plaintiff has yet to make such a request. (*See* Def.'s Mem. 22–23; Pl.'s Opp'n 19.) Thus, this issue is not ripe, and Defendant's request is denied at this time. *Cf. Gen. Star. Indem. Co. v. Driven Sports, Inc.*, 80 F. Supp. 3d 442, 445–46, 459–64 (E.D.N.Y. 2015) (issuing a decision on recoupment of claim expenses when the insurer had moved for recoupment). Similarly, Plaintiff states that it will continue to "challenge[] all Claims Expenses incurred by [Defendant] as unreasonable" until Defendant provides information to Plaintiff or the Court to allow it to analyze the reasonableness of the fees. (Pl.'s Opp'n 18.) The Court declines to issue a ruling on attorney's fees at this time, because it has not been fully briefed by both Parties.[16]

---

[15] The Policy provides that "Claim Expenses" include "fees and costs charged by attorneys designated by the Company or designated by an Insured *with the Company's prior written consent*." (Policy 2 (emphasis added).) In at least one case, the Second Circuit has found that even when independent counsel was warranted, a similar provision permitted the insurer "to participate in the selection of independent counsel," which "was not contrary to public policy." *N.Y. State Urban Dev. Corp. v. VSL Corp.*, 738 F.2d 61, 65–66 (2d Cir. 1984). However, because this issue has not been briefed by the Parties, the Court does not consider its application here.

[16] Other arguments raised by the Parties in their briefing are moot in light of this Opinion and thus are not addressed in detail here. First, seemingly in anticipation of a waiver argument by Defendant, Plaintiff avers that it did not create a duty to defend by failing to explicitly refuse to defend Defendant in its July 31, 2018 Letter. (Pl.'s Mem. 22–23.) Defendant, however, does not actually argue this point in its Memorandum or Opposition. (*See* Defs.' Opp'n 18 ("[Plaintiff] argues that the doctrine of waiver cannot be used to create coverage, but that is not the basis for [Defendant's] waiver argument.").) Second, Defendant argues that Plaintiff waived any right to appoint Defendant's counsel and control its defense because it waited over six months to invoke that right. (Def.'s Mem. 20–21.) As the Court has determined that a conflict exists and, thus, Defendant is entitled to independent counsel, it is not necessary to discuss this argument in detail.

### III. Conclusion

For the foregoing reasons, the Court denies Plaintiff's Motion and grants in part Defendant's Motion but denies Defendant's request for a declaration that Plaintiff may not recoup Claim Expenses, without prejudice. The Court will hold a status conference on May 5, 2020 at 2:00 p.m.

The Clerk of the Court is respectfully directed to terminate the pending Motions. (Dkt. Nos. 27, 28.)

SO ORDERED.

Dated: March 27, 2020
      White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE